In the Matter of the Guardianship of Lewis L. Gray, a Minor, S. B. Barnes, Guardian.

Guardian and Ward: ACCOUNTING. C, as guardian of a minor, received $787.07, and thereafter was removed and defendant appointed, who was C's general attorney and who admitted shortly before C's death that he held $980 of the minor's money. As attorney for C, defendant was entitled to charge five per cent. on moneys collected and disbursed by him, and after C's death defendant rendered an account as such attorney, which showed a balance of $203.74, which amount being insufficient to pay his commissions, defendant credited himself with $980.00 paid the minor's estate as returned, and from the balance deducted $900 commissions, and paid C's executor the balance. On an accounting of his acts as guardian, defendant was properly required to pay over the funds of his ward, although he claimed to be unable to find where the same had been invested by C.

*Appeal from Mills District Court.*—Hon. A. B. Thornell, Judge.

Friday, April 10, 1903.

This is an appeal by S. B. Barnes, guardian of Lewis L. Gray, a minor, from the judgment of the district court made and entered upon hearing of final report filed by said guardian. The opinion sufficiently states the facts.— *Affirmed.*

*A. E. Cook* and *W. S. Lewis* for appellant.

*E. B. Woodruff* for appellee.

Bishop, C. J.—It appears that prior to September 26, 1895, one W. M. Coats had been appointed and qualified as guardian of said minor, Lewis L. Gray. On the date mentioned, Coats received cash belonging to said minor in the sum of $725, and on October 16th following the further

sum of $62.07. In the early part of the year 1899 the said
Coats was removed as guardian, and S. B. Barnes was
appointed and qualified in his stead. In November, 1900,
Coats died, and W. W. Micklewait was appointed and
qualified as executor of his estate. The abstract is some-
what confusing as to the facts, but therefrom we gather
that in December, 1900, the said Barnes filed his final
report—his ward having in the meantime reached the age
of majority—in which he refers to the amounts of money
coming into the hands of his predecessor, Coats, but says
he has been unable to find where such funds have been
invested. We are left to infer that it is asserted in the
report that no property in fact ever came to his hands,
that there is no probability that anything will ever be
realized out of the Coats' estate, and that accordingly the
guardian is asking for his discharge. To such final report
the said Lewis L. Gray filed written objections, in which
it is asserted that the moneys collected by Coats were
afterwards received by Barnes, and that he (said Barnes)
now has about $950, which he retains and refuses to pay
over. The executor of the estate of Coats and the sureties
on the guardianship bond of Coats appear and join with
Gray in making such objection.

It appears that in March, 1899, Coats, who was about
to go away from his home, gave to Barnes a general power
of attorney, authorizing him to take possession of and
transact all business in which said Coats was interested.
Barnes proceeded to execute such power, and in Decem-
ber, 1900, after the death of Coats, he rendered to Mickle-
wait, executor, an account of his doings as such attorney
in fact, from which it appears that on October 14, 1899,
among other disbursements, he charged to Coats an item
of $980 on account of the Coats guardianship of L. L. Gray.
By letters of date August 15, 1900, and September 13,
1900, Barnes admitted that the Gray money was in his

hands, in the sum of $980. He also testifies as a witness in this proceeding that he had in fact paid to himself as guardian said sum of money out of the funds in his hands belonging to Coats. It seems that in making his final accounting to Micklewait, executor, he claimed that by virtue of an agreement with Coats he was entitled to charge for his services the sum of five per cent on all moneys collected and disbursed by him. The amount shown to have been collected in that behalf was $18,016.37, and the disbursements, not including compensation, $17,812.63; leaving a balance of $203.74. Such being the state of the account, a settlement was attempted to be made by Barnes with the executor. Therein he proceeded to give himself credit for the sum of $980, "money paid Gray estate returned"; thus making the balance in his hands $1,183.74, from which sum he then deducted the amount of the compensation claimed by him, being $900.81, and thereupon turned over the balance, or $282.93, to Micklewait executor.

One of the grounds upon which Barnes, in his testimony, now attempts to justify his course as above referred to, is that the moneys paid over to himself as guardian, as shown in his account, and as reported by him, in point of fact belonging to another estate, of which Coats was the legal representative, and should not, therefore, have been credited to the matter of the Gray guardianship. It is sufficient answer to this contention to say, without going into details, that it appears from his own testimony that the amount due from Coats to such other estate was fully settled by him (Barnes) from other funds in his hands under an order and approval of court. Another ground of excuse, which comes to the surface for the first time in his testimony, is that he had learned in some way that the Gray moneys had been invested—just how, it is not clear —in an equity in some lands, and that the same could not be realized upon because of the sale or appropriation of

such lands under a prior claim or lien. This excuse is not only shadowy in the extreme, but it is in direct contradiction to all his former statements. The court below evidently took the view, in which we concur, that Barnes, surprised at finding the final balance in his hands belonging to the Coats estate insufficient to pay his claimed compensation, concluded to readjust the account so as to pay himself in full at the expense of Gray, his ward. That such conduct cannot be approved must be apparent.

The court below, by its judgment, ordered payment to Gray by Barnes of the sum shown to have been received by him, with interest, less the sum paid to Micklewait, executor, which latter sum is ordered paid to Gray by said executor. Such judgment meets our approval, and it is AFFIRMED.